Interstate Carriers Cooperative, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Anthony DeSanto, Jr., Respondents.

Argued February 1, 1982, before Judges MENCER, BLATT and DOYLE, sitting as a panel of three.

*Stephen J. Harlan, Swartz, Campbell & Detweiler,* for petitioner.

*Joseph F. Wusinich, III, Wusinich and McCarthy,* for respondent, Anthony DeSanto, Jr.

OPINION BY JUDGE BLATT, April 27, 1982:

Interstate Carriers Cooperative (employer) appeals a decision of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision that Anthony DeSanto, Jr. (claimant) was totally disabled as a result of an injury he sustained in the course of his employment.

The following facts determined by the referee are supported by substantial evidence[1] in the record. The claimant, an interstate truck driver and resident of Pennsylvania, was at his home in Pennsylvania when he accepted an over-the-telephone offer of employment made by the employer who allegedly operates out of Fort Worth, Texas. He then began hauling agricultural products for the employer primarily between the east and west coasts, and, upon his return from one of his west coast hauls and while unloading his cargo in Washington, D.C., on February 26, 1976, he was attacked by an unknown assailant and repeatedly beaten about the head, shoulder, back, ribs and arms with a steel pipe. He called his employer's dispatcher who instructed him, despite an attempt by the claimant to explain his physical condition, to pick-up immediately a load of mushrooms and to transport them to California or else he would be discharged. The claimant, fearful of losing his job, did as directed and, once in California, he saw a doctor regarding his physical condition. He subsequently told his employer that he could not work because of his injuries and that he was going to go home to rest and seek further medical attention. The employer then demanded the return of all of this claimant's interstate commerce tags.

The claimant then saw several doctors who testified before the referee that the claimant complained of blurred vision, headaches, loss of grip in his right arm [sic], and parethesia of the right arm and hand. These doctors, in giving medical testimony before the referee,

---

[1] Where, as here, the party with the burden of proof (as to eligibility) has prevailed below, our scope of factual review is limited to a determination of whether or not constitutional rights were violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence. *United States Steel Corp. v. Workmen's Compensation Appeal Board*, 52 Pa. Commonwealth Ct. 641, 416 A.2d 619 (1980).

opined that the claimant was suffering from hypertension and post-traumatic concussionals, peritendonitis of the right shoulder, submicosal hyperthropy, labyrinthitis (visual and balance problems), a deviated septum, a reduction in hearing capacity, a straightening of the spine, a contusion to the lateral muscle mass in the elbow, a condition of mallet finger of the right middle finger, and a persistent pain in the base of the neck. Testimony by some of these medical witnesses unequivocally stated that these conditions were related to the February 26, 1976 attack and that the claimant would be physically unable to perform his duties in a satisfactory and safe manner.

The employer presented the testimony of Dr. Joseph Sataloff, M.D., who opined that upon examining the claimant he could find no evidence of labyrinthitis nor any evidence of a deviated septum. He further stated that it was not possible for the claimant to have sustained a deviated septum as a result of the February 26, 1976 incident. The referee, however, chose to rely on the claimant's witnesses and found the claimant to be totally disabled from April 6, 1976 to an indefinite time in the future, and the Board affirmed.

Initially the employer argues that the Board erred in finding jurisdiction entitling the claimant to benefits under the Pennsylvania Workmen's Compensation Act[2] when it concluded that he was "working under a contract of hire made in this State in employment not principally localized in any state. . . ." Section 305.2 (a)(2) of the Act, 77 P.S. §411.2(a)(2). The employer and the claimant agree in their briefs that the focus of Section 305.2(a)(2) is on the employee's employment and not on the employer. Our close examination of the record discloses, contrary to the employer's allegations, that substantial evidence exists which supports the referee's finding that the contract of hire was en-

[2] (Act) Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1603.

tered[3] into in Pennsylvania, and his findings[4] which underpin his conclusion that the claimant's employment was *not* principally localized[5] in any state within the meaning of Section 305.2(a)(2). The fact that the referee assigned little weight to contrary evidence offered the employer does not impugn the validity of his findings on these points inasmuch as it is axiomatic that questions of evidentiary weight, credibility, and the resolution of conflicts in the evidence are solely within the fact-finding referee's province. *Workmen's Compensation Appeal Board v. Phillips,* 29 Pa. Commonwealth Ct. 613, 372 A.2d 63 (1977). We believe, therefore, that the employer's jurisdictional challenge is without merit.

The employer next argues that there was no substantial competent evidence to support the referee's determination that the claimant remained totally dis-

---

[3] Where a contract is accepted by telephone, the acceptance is effective and the contract is created at the place where the acceptor speaks. *Linn v. Employers Reinsurance Corp.,* 392 Pa. 58, 139 A.2d 638 (1958).

[4] The record supports the uncontested referee's finding that the claimant hauled cargo between and among cooperative members located in 48 states, plus Canada. Also, the record indicates that the claimant did not regularly work at or from the employer's Texas operation. Furthermore, the employer's general manager testified that its business is not principally localized in any one state and an inference can be drawn to support the referee's and Board's conclusion that the claimant's employment was not either.

[5] The employer argues that *Loomer v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 591, 388 A.2d 788 (1978) controls the instant case. We find, however, that the facts there are significantly different from the facts here. In *Loomer* the claimant had an office at the employer's premises in New York, routinely attended weekly meetings there, and worked in a territory composed of only two states—New York and Pennsylvania. Here the record evinces that the claimant did business in numerous states and would make runs from coast to coast without working regularly at or from the Texas operation within the meaning of Section 305.2(d)(4)(i) of the Act, added by Act of December 5, 1974, P.L. 782, 77 P.S. §411.2 (d)(4)(i).

abled for purposes of performing his regular job of interstate tractor-trailer driver on or after November 13, 1978.[6]

Here, although there was testimony that the claimant might work on a trial basis due to a cessation of post-concussional conditions and labyrinthitis, the record does not show that his spinal condition, neck problems, right shoulder, arm and hand problems were resolved so as to permit him to perform his regular duties which included loading and unloading a trailer.[7] And, under either the substantial evidence standard of review which the employer alleges applies or the capricious disregard standard which we believe is more appropriate here as to this issue, our examination of the record in its entirety leads us to believe that the referee and Board could have reasonably concluded that the claimant's disability persisted beyond November 13, 1978.

We will therefore affirm the Board's order.

## ORDER

AND Now, this 27th day of April, 1982 the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

---

[6] Thus, the employer does not contest, according to its statement of the questions presented in its brief, that the claimant was totally disabled from April 6, 1976 to November 13, 1978, but rather seeks to prove that the disability has ceased. We have recognized in the analogous situation where an employer seeks to terminate a claimant's benefits that the employer has the burden of proving that all work-related disability has ceased. *K-Mart Corp. v. Workmen's Compensation Appeal Board*, 56 Pa. Commonwealth Ct. 52, 424 A.2d 956 (1981).

[7] Once a claimant has shown he can no longer perform his former work because of a work-related injury, the burden shifts to the employer to show that other work which the claimant is capable of performing is available. *Mickles v. Workmen's Compensation Appeal Board*, 59 Pa. Commonwealth Ct. 109, 428 A.2d 1035 (1981). Here there was no such showing.

It is further ordered that judgment be entered in favor of the respondent Anthony DeSanto, Jr., and against the petitioner Interstate Carriers Cooperative and/or its insurer, at the rate of $187.00 per week from April 6, 1976 to an indefinite time in the future within the terms and limitations of the Act. Additionally it is ordered that Interstate Carriers Cooperative and/or its insurer shall reimburse Anthony DeSanto, Jr., directly for the following medical expenses:

| | |
|---|---|
| Drs. Hoberman and Lovrinic | $489.00 |
| Dr. Charles R. Wolf | 100.00 |
| Chester County Hospital | 403.55 |

Interstate Carriers Cooperative and/or its insurer shall reimburse the respondent's counsel, Joseph R. Wusinich, III, Esquire, for the following costs:

| | |
|---|---|
| Report of Dr. Fukui | $ 35.00 |
| Report of Dr. Buchwald | 50.00 |
| Deposition transcript for Dr. Buchwald | 135.40 |
| Dr. Guagliardo's expert witness fee | 250.00 |
| Physician transcript—Dr. Guagliardo | 94.55 |
| Deposition transcript of Dr. Wolf | 31.50 |
| Chester Cty. Hospital Records, Record Copy Services | 19.05 |

Counsel fees in the amount of twenty (20%) percent of all compensation due is payable to, and Interstate Carriers Cooperative and/or its insurer, is directed and ordered to deduct the same and mail to: Joseph F. Wusinich, III, Esquire, 20 North Darlington Street, West Chester, Pennsylvania 19380.

All deferred payments of compensation shall bear interest at the rate of ten (10%) percent in accordance with the Act and inasmuch as the petitioner had a reasonable basis for contesting respondent's claim, attorney's fees are not assessed against Interstate Carriers Cooperative or its insurer.

This decision was reached prior to the resignation of Judge MENCER.