# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Debbie Cardona, : 
           Petitioner : 
             : No. 750 C.D. 2017
        v. :
             : Submitted: December 1, 2017
Workers' Compensation Appeal :
Board (Pleasant Valley Manor), :
           Respondent :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: January 30, 2018

Debbie Cardona (Claimant) petitions for review of the May 16, 2017 order of the Workers' Compensation Appeal Board (Board), which affirmed the order of a Workers' Compensation Judge (WCJ) granting a termination and utilization review petition filed by Pleasant Valley Manor (Employer) and denying Claimant's review petition.

## Facts and Procedural History

Claimant worked for Employer as a certified nursing assistant. On June 7, 2010, Claimant was injured at work when she slipped and fell on a wet floor. Employer issued a Notice of Temporary Compensation Payable (NTCP), describing

her injury as "contusions to the left hip, left ankle, and lower back," (Finding of Fact (F.F.) No. 1), and Claimant began receiving total disability benefits. Employer later issued a second NTCP, describing her injury as a lower back strain. (F.F. Nos. 6, 1.)

In November 2012, Employer filed a utilization review request regarding Claimant's treatment with Kenneth Zahl, M.D., from October 12, 2012, and ongoing. For unknown reasons, two utilization review determinations were generated and the parties agreed that the February 1, 2013 determination by Michael J. Drass, M.D., was controlling and that the petition to review the second report would be dismissed. In December 2012, Employer filed a termination petition, alleging that Claimant had fully recovered from her injury as of October 25, 2012. In January 2013, Employer filed a suspension petition based upon an offer of employment, alleging Claimant was able to return to unrestricted work. (F.F. Nos. 2-4; Board's 5/14/15 op. at 1.)

In February 2013, Claimant filed a review petition, which sought to amend the description of her injury to include a left hip contusion, trochanteric bursitis, left ITB tendinitis, left abductor strain, left pes anserine bursitis, L5-S1 disc herniation with radiculopathy, lumbar radiculitis, left ankle tibial tendinopathy, left ankle sprain, left peroneal tendinopathy, Achilles tendinitis, left ankle synovitis, arthralgia left ankle, post-traumatic headaches, concussion, concussion syndrome, Reflex Sympathetic Dystrophy (RSD), cervicalgia, and cervicobrachial syndrome. The matter was assigned to a WCJ who held multiple hearings. (F.F. No. 5; Reproduced Record (R.R.) at 320a.)

Claimant testified at a hearing and stated that her job as a certified nursing assistant involved bathing, lifting, feeding, and caring for nursing home residents, which required frequent bending, kneeling, squatting, and lifting from 5 to 200 pounds. On the day of her injury, Claimant testified that she walked out of a room to serve

2

dinner and slipped and fell on a wet floor, which caused her to twist her whole body, resulting in her left hip, ankle, and head striking the ground. Claimant stated that she was taken to an emergency room by ambulance where she received x-rays of her left ankle and an air cast. Claimant indicated that she followed up with several doctors and received physical therapy, medications, orthotics, MRIs of her left ankle and hip, a Doppler test on her left leg, and a CAT scan of her head. Claimant also testified that she had surgery on her ankle in January 2011. Claimant stated that she received referrals to Dr. Zahl, a pain management doctor with whom she continued to treat monthly, and Dr. James Kerrigan, a neurologist. (F.F. No. 6.)

With regard to her treatment with Dr. Zahl, Claimant stated that she had MRIs, blocking injections, and two spinal cord stimulator trials, and had been prescribed various medications. Claimant indicated that the injections helped somewhat but nothing has given her any lasting benefit. Claimant testified that her ankle was presently swollen and painful to the touch and, consequently, she was unable to tie her shoe and must leave it open. She stated that she continued to have occasional issues with her hip and that her migraines were lessened by injections she received about every six months. Claimant acknowledged that in November 2012 Employer sent her a job offer to return to work but stated that she had not returned to her pre-injury job because she did not feel she was fully recovered, was in too much pain, and could not stand for an entire shift. (F.F. at 6; R.R. at 507a-08a.)

Claimant also presented the testimony of Dr. Zahl, who testified that he first saw Claimant in October 2011, at which point she was complaining of left ankle pain with burning and swelling, headaches, and low back pain. Dr. Zahl stated that he diagnosed her with RSD or complex regional pain syndrome in her lower limb, cervicobrachial pain syndrome, and other symptoms related to her low back. Dr. Zahl

3

testified that the diagnosis was causally related to her June 17, 2010 work injury and began treating her with injections, medications, and subsequently a spinal cord stimulator. Dr. Zahl indicated that he was currently treating Claimant with medication and would possibly treat her with a spinal stimulator in the future. He testified that all of his treatment for Claimant was reasonable and necessary and stated his belief that Claimant had not fully recovered from her work injury and was unable to return to work. (F.F. No. 9; Board's 5/14/15 op. at 3.)

Employer presented the testimony of Michael Raklewicz, M.D., a board-certified orthopedic surgeon, who performed an independent medical examination of Claimant in October 2012. Dr. Raklewicz diagnosed Claimant's work injury as a hip contusion, which possibly resulted in some trochanteric bursitis, and a left ankle sprain. Dr. Raklewicz opined that, at the time of his examination of Claimant, she had recovered from her ankle and hip contusion and, because he did not see evidence of a back contusion or strain, any such injury had resolved. Dr. Raklewicz testified that, in his opinion, Claimant could return to her pre-injury job without restrictions and that she did not require any further medical treatment. Additionally, Dr. Raklewicz stated that he did not believe Claimant had sustained any injuries not listed in the original injury description. (F.F. No. 8; Board's 5/14/15 op. at 3-4.)

Employer also presented the testimony of Paul Shipkin, M.D., a board-certified neurologist who performed two examinations of Claimant in February 2011 and May 2013. Dr. Shipkin diagnosed Claimant with a minor left scalp contusion and bruising or contusions involving her left ankle, hip, and low back, resulting from her work injury. Dr. Shipkin opined that Claimant's headache symptoms were not related to her work injury and stated that he saw no evidence of post-concussion syndrome or RSD. Ultimately, Dr. Shipkin concluded that Claimant had fully recovered from her

4

work injury, did not require any further treatment, and was able to return to her pre-injury job without restrictions. (F.F. No. 10; Board's 5/14/15 op. at 4.)

Finally, Employer presented the testimony of Susan Roberts, Employer's director of human resources. Ms. Roberts testified that she sent a job offer letter to Claimant in November 2012, offering her the position she previously held as a certified nursing assistant. Ms. Roberts stated that she was not Claimant's supervisor and that the nursing supervisor would have to provide any potential modifications of the position's duties. (F.F. No. 7.)

## A. WCJ's March 28, 2014 Decision and Order

By decision and order dated May 28, 2014, the WCJ granted Employer's termination petition as of October 25, 2012, and denied Claimant's review petition seeking to amend the injury description.

The WCJ found Claimant generally credible but noted that she was not "entirely candid with regard to her symptoms." (F.F. No. 11.) Specifically, the WCJ stated that, based upon her bearing and demeanor, Claimant's testimony with regard to her symptoms was rejected as not credible. *Id.*

In considering Dr. Zahl's testimony, the WCJ noted that Dr. Zahl "relied almost entirely upon [] Claimant's subjective complaints rather than on objective testing." (F.F. No. 15.) The WCJ rejected his testimony for that reason and to the extent that it was inconsistent with the "more credible testimonies" of Dr. Raklewicz and Dr. Shipkin. *Id.*

The WCJ found Dr. Raklewicz's testimony credible, explaining that he was able to "competently and positively explain the basis for his opinions" and was "entirely logical and . . . unshaken on cross-examination." (F.F. No. 13.) Similarly,

5

the WCJ found Dr. Shipkin's testimony credible and persuasive. The WCJ noted that neither Dr. Raklewicz nor Dr. Shipkin had "any financial interest in continuing to treat [] Claimant." (F.F. No. 14.)

Finally, the WCJ considered the testimony of Ms. Roberts and found her generally credible, observing that she merely stated that she sent Claimant the job offer and made no particular claims with regard to it. (F.F. No. 12.)

The WCJ ultimately found that Claimant failed to prove that the injury description should have been amended. Specifically, the WCJ found that Claimant did not prove that she suffered from RSD or post-concussive syndrome. The WCJ specifically noted Dr. Raklewicz's testimony that left hip trochanteric bursitis, ITB tendonitis, and left abductor strain were the same thing and that "arthralgia of the left ankle" simply meant ankle pain, none of which were present in Claimant. (F.F. No. 18.) Concluding that Claimant failed to prove that she suffered injuries in excess of those listed in the NTCP, the WCJ determined that the NTCP accurately described the work injury as a lower back strain and dismissed Claimant's review petition. (*Id.*; Conclusion of Law (C.L.) No. 5.)

Conversely, the WCJ concluded that Employer proved by sufficient, credible, and competent evidence that Claimant was fully recovered as of October 25, 2012, and terminated benefits as of that date. Further, the WCJ found Employer proved that the medical treatment rendered by Dr. Zahl was unreasonable and unnecessary as of that date and granted Employer's petition to review the utilization review determination. Finally, the WCJ dismissed Employer's suspension petition as moot. (C.L. Nos. 2-4.) Claimant appealed to the Board.

**B. Board's May 14, 2015 Opinion**

6

On appeal, the Board affirmed in part and remanded in part. The Board determined that the WCJ did not err in granting Employer's termination petition, noting that the testimony of Dr. Raklewicz and Dr. Shipkin, which the WCJ found credible, constituted sufficient evidence establishing that Claimant had fully recovered from her work injuries. The Board also found the WCJ did not err in denying Claimant's review petition to amend the injury description, as Claimant failed to establish a causal relationship between her work and her injuries with unequivocal medical evidence. The Board noted that the WCJ rejected Dr. Zahl's testimony in favor of Drs. Raklewicz and Shipkin, and, as such, there was no supporting evidence to prove Claimant's injury description should have been expanded.

Next, the Board held that the WCJ did not err in determining that Claimant's medical treatment post-October 25, 2012, was not reasonable and necessary since the WCJ properly suspended her benefits as of that date. The Board also addressed Claimant's argument that the WCJ erred in determining that Employer's contest was unreasonable with regard to its suspension petition. The Board rejected the argument, observing that Employer was able to present evidence to support a suspension in the form of testimony that Employer offered Claimant a position and that Claimant was able to return to her full-time, pre-injury position. (Board's op. at 6-7.)

Finally, the Board addressed Claimant's contention that the WCJ erred in failing to award litigation costs since she prevailed, in part, on her utilization review petition. The Board agreed that, because the WCJ found that some of Claimant's treatment with Dr. Zahl—the treatment prior to October 25, 2012—was reasonable and necessary, Claimant was entitled to at least a portion of her litigation costs. The Board remanded solely on that issue for the WCJ to apportion the appropriate costs.

Claimant then filed a petition for review with this Court. By order dated June 22, 2015, this Court quashed the appeal as interlocutory because the Board ordered a remand for further proceedings. *Cardona v. Workers' Compensation Appeal Board*, (Pa. Cmwlth., No. 960 C.D. 2015, filed June 22, 2015).

## C. Proceedings on Remand

The parties entered into a stipulation in which Employer agreed to pay $1,032.93 of Claimant's litigation costs. The WCJ approved the stipulation and entered it into the record.

Claimant appealed to the Board, raising the same issues as in her appeal from the WCJ's prior order, and filed a motion to make final the Board's May 14, 2015 opinion pursuant to *Shuster v. Workers' Compensation Appeal Board (Human Relations Commission)*, 745 A.2d 1282 (Pa. Cmwlth. 2000). The Board granted the motion and Claimant filed a petition for review with this Court,[1] asserting that the WCJ erred in (1) determining that Employer met its burden on its termination petition with substantial competent medical evidence; (2) failing to review all of the evidence of record and, hence, failed to issue a reasoned decision; (3) denying her review petition and determining that Claimant failed to meet her burden of proving the injury description should have been expanded; (4) granting Employer's utilization review petition despite failing to review all of the evidence of record; and (5) finding that Employer's contest, via the suspension petition, was reasonable.

---

[1] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

## Discussion

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id.* We will not disturb the WCJ's findings on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

Moreover, where both parties present evidence, it is irrelevant that the record contains evidence that supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Additionally, on appeal, all inferences drawn from the evidence shall be taken in favor of the party prevailing before the WCJ. *Krumins Roofing and Siding v. Workmen's Compensation Appeal Board (Libby)*, 575 A.2d 656, 659 (Pa. Cmwlth. 1990).

## Termination Petition

In Claimant's first argument, she contends that the WCJ erred in granting Employer's termination petition because the evidence of Employer's physician

witnesses was contradictory, not credible, and insufficient to meet its burden of proof. With regard to Dr. Raklewicz, Claimant highlights what she considers to be several inconsistencies in his testimony, which rendered it equivocal and not credible. For example, Claimant emphasizes Dr. Raklewicz's testimony that, although Claimant's left ankle exhibited a decreased range of motion, he felt that it was minor and Claimant was fully recovered. Claimant counters, "[I]f there was an impairment present on the exam, then obviously Claimant was not fully recovered." (Claimant's brief at 26.) Claimant contends that Dr. Raklewicz dismissed Claimant's symptoms that were indicative of ongoing symptomatology and disease so that he could render an opinion of full recovery. Claimant also argues that Dr. Raklewicz's testimony could not have constituted competent evidence because it relied upon an incomplete medical history in that Dr. Raklewicz based some of his opinion on an MRI report instead of the actual film. Based upon this, Claimant concludes that the WCJ erred in finding Dr. Raklewicz credible.

Claimant next asserts that Dr. Shipkin's opinion as to Claimant's full recovery was "likewise not worthy of belief," citing the fact that he only saw Claimant on two occasions and testified he did not routinely treat patients with "traumatically induced" RSD. (Claimant's brief at 27.) Claimant also refers to Dr. Shipkin's testimony that Claimant did not have RSD, despite acknowledging Claimant appeared to have symptoms that could be associated with RSD, which were decreased muscle strength and some swelling in her left ankle. Claimant further argues that the WCJ should have rejected Dr. Shipkin's testimony as not credible because there is no method to prove the accuracy of his opinion that Claimant did not suffer from ongoing work-related headaches.

We agree with the following observation of the Board:

10

> Claimant makes numerous arguments as to why the [WCJ] should have decided differently based on the evidence[; however,] the relevant inquiry in a substantial evidence analysis is not whether the record contains evidence to support facts other than those made by the [WCJ]; the critical inquiry is whether there is evidence to support the findings actually made.

(Board's 5/14/15 op. at 5.)

Here, the credible testimony of Dr. Raklewicz and Dr. Shipkin that Claimant was fully recovered from her work injury constituted substantial evidence supporting the WCJ's termination of Claimant's benefits. Both doctors performed comprehensive physical examinations of Claimant, as well as a review of her medical records and history, and both doctors explained their findings at length in their reports.

With regard to Claimant's argument that Dr. Raklewicz's testimony relied on incomplete medical records, Claimant proffers no analogous precedent for her argument that a physician's entire medical testimony is incompetent when it is based, in part, on a review of an MRI imaging report instead of actually viewing the MRI films. Instead, Claimant relies upon *Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corporation)*, 692 A.2d 1062 (Pa. 1997), which is entirely distinguishable from the facts of the present case.

In *Newcomer*, a claimant alleged a new shoulder injury two years after sustaining a work injury involving an impact to his abdomen. The claimant presented the testimony of a doctor, who stated that the shoulder problem was caused by the workplace injury. However, the doctor admitted that he had not reviewed any hospital records from the original injury, was not involved in any treatment immediately following the injury, and acknowledged that his opinion was based "solely and *expressly* on the medical history provided by [the claimant]." *Id.* at 1063. Our Supreme Court held that the doctor's testimony was based on a false medical history and,

11

therefore, legally incompetent, noting that the claimant's description of the work injury to the doctor was "patently different" from his original description of the injury. *Id.* at 1066.

Conversely, here, as noted above, Dr. Raklewicz based his testimony upon a comprehensive review of Claimant's "extensive" medical records as set forth in his records review report, which listed each of the approximately 42 individual records he reviewed, as well as a physical examination of Claimant. (F.F. No. 8; R.R. at 223a-44a.) Thus, an assertion that Dr. Raklewicz's testimony was based upon incomplete or inaccurate medical information for failure to review an MRI film is, at best, disingenuous.

Claimant's argument that the doctors' testimony was inconsistent or not credible is likewise unavailing. Although Dr. Raklewicz acknowledged that Claimant's left ankle had a minor decreased range of motion, he specifically stated that this finding did not change his opinion regarding Claimant's full recovery or her ability to return to work because he did not feel that "five degrees less dorsiflexion and plantar flexion is going to impair [Claimant]. . . [u]nless [she were] a sprinter, perhaps." (R.R. at 195a.) Claimant argues that any continued ankle impairment is relevant to her ability to perform her pre-injury position as a certified nursing assistant, "who stands on her feet for an entire shift." (Claimant's brief at 26.) This argument, however, merely expresses disagreement with Dr. Raklewicz's expert opinion and, as Employer notes, uses that disagreement as the basis of an impermissible challenge to the WCJ's credibility determination.[2]

---

[2] Claimant also argues that the WCJ should not have relied on Dr. Shipkin's testimony about RSD because he "did not routinely treat patients with traumatically induced RSD." (Claimant's brief at 27.) In addition to the fact that Claimant is again impermissibly challenging the WCJ's weight and credibility determinations, Claimant is incorrect. In fact, Dr. Shipkin testified that he actively

**Reasoned Decision**

In Claimant's second argument, she avers that the WCJ failed to render a reasoned decision by failing to address all of the evidence of record—specifically, the utilization review report of Dr. Drass. Claimant further states that the WCJ could not have reached his conclusions based upon the evidence he reviewed because he "failed to accurately render findings consistent with the testimony and opinions enunciated by Dr. Zahl," and, further, he "mischaracterized" his testimony. (Claimant's brief at 30-31.)

Section 422 of the Workers' Compensation Act (Act),[3] states

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

77 P.S. §834. A decision is reasoned if it allows for adequate review by this Court under applicable review standards. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

---

treated patients with RSD, most commonly resulting from a stroke and, contrary to Claimant's argument, the record does not reveal that Dr. Shipkin was ever questioned regarding his experience in treating patients with "traumatically induced" RSD. Moreover, Claimant makes no attempt to explain the significance of such a distinction. (R.R. at 543a-44a, 581a.)

Furthermore, even if Claimant were correct that Dr. Shipkin was testifying outside of his expertise, we have previously held that "an expert medical witness in a workers' compensation proceeding is qualified to testify outside of his medical specialty, and any objection to that testimony goes to the weight of the evidence, not its competency." *Lombardo*, 698 A.2d at 1381. Despite Claimant's arguments to the contrary, determinations on the weight and credibility of evidence are not reviewable on appeal. *See Lombardo*, 698 A.2d at 1381.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834.

13

Here, the WCJ explained his reasoning for finding that Claimant had recovered as of October 25, 2012, and that, consequently, her treatment with Dr. Zahl after that date was unreasonable and unnecessary. Specifically, the WCJ adopted the opinions of Drs. Raklewicz and Shipkin, both of whom expressed a belief that Claimant was magnifying and being dishonest about her symptoms and that continuing medical treatment was unnecessary. (F.F. Nos. 8, 10.) In adopting their opinion, the WCJ came to the opposite conclusion of Dr. Drass in the utilization review report, which stated that all but one of the treatments that Claimant was receiving from Dr. Zahl were reasonable and necessary. (R.R. at 516a-23a.) Accordingly, the WCJ granted Employer's petition to review the utilization review determination. Because the WCJ rendered an opinion that was sufficient for appellate review, we reject Claimant's argument. *See Acme Markets, Inc. v. Workers' Compensation Appeal Board (Brown)*, 890 A.2d 21, 26 (Pa. Cmwlth. 2006) ("A reasoned decision does not require the WCJ to give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision.").

Although Claimant argues that the WCJ "mischaracterized" portions of Dr. Zahl's testimony to suggest that Dr. Zahl did not "make certain findings," Claimant does not indicate which portions specifically were mischaracterized and, consequently, the Court is unable to address the merits of this argument. (Claimant's brief at 32.)

### Review Petition

In Claimant's third argument, she asserts that the WCJ erred in denying Claimant's review petition since all three physicians agreed that Claimant's work injuries were more expansive than those listed on the NTCP, which listed only a "strain" in the "lower back area." (R.R. at 89a.) Specifically, Claimant contends that

14

Dr. Raklewicz acknowledged her ankle and left hip injuries and that Dr. Shipkin acknowledged that Claimant suffered from a concussion and post-concussive syndrome. Thus, because these injuries exceed those listed in the NTCP, Claimant argues that the WCJ erred in finding that the injury description should not have been amended. Claimant also states that the WCJ's finding that Dr. Zahl's treatments prior to October 25, 2012, were reasonable and necessary conflicts with the WCJ's decision not to expand the description as some of Claimant's treatment with Dr. Zahl was for her ankle injury and headaches.

As the Board correctly noted, it was Claimant's burden to establish a causal relationship between the work injury and the additional injuries not listed on the NTCP with unequivocal medical evidence, unless the relationship was obvious. *See Liveringhouse v. Workers' Compensation Appeal Board (ADECCO)*, 970 A.2d 508, 512 (Pa. Cmwlth. 2009).

Here, in finding the testimony of Claimant and Dr. Zahl not credible, the WCJ rejected the testimony that Claimant produced to meet her burden. Furthermore, the testimony of Dr. Raklewicz and Dr. Shipkin plainly does not constitute unequivocal medical evidence establishing a causal relationship between her work injury and the alleged additional injuries. The alleged injuries included left hip contusion, trochanteric bursitis, left ITB tendinitis, left abductor strain, left pes anserine bursitis, L5-S1 disc herniation with radiculopathy, lumbar radiculitis, left ankle tibial tendinopathy, left ankle sprain, left peroneal tendinopathy, Achilles tendinitis, left ankle synovitis, arthralgia left ankle, post-traumatic headaches, concussion, concussion syndrome, RSD, cervicalgia, and cervicobrachial syndrome.

Although Dr. Raklewicz diagnosed Claimant with a work-related hip contusion, possibly resulting in trochanteric bursitis, and a mild left ankle sprain, he

15

emphasized that Claimant had fully recovered by the time of his examination, noting that an MRI of Claimant's ankle taken shortly after the injury showed normal findings. (R.R. at 175a.) Dr. Raklewicz also stated that if Claimant had sustained a lower back strain, it had resolved by the time of his evaluation. (R.R. at 176a.) Further, Dr. Raklewicz testified that Claimant had not sustained work-related left pes anserine bursitis, an L5-S1 herniated disc/protrusion with radiculopathy, lumbar radiculitis, left ankle synovitis, Achilles tendinitis, arthralgia of the left ankle, cervicalgia or cervical brachial syndrome. (R.R. 177a-80a.) Dr. Raklewicz also stated he found no evidence of RSD, emphasizing that results of Claimant's bone scan, which is often used to diagnose RSD, were normal. (R.R. at 164a.)

Similarly, Dr. Shipkin diagnosed Claimant with a minor left scalp contusion/concussion, and bruising/contusions of the left ankle, hip, and low back areas, which had all resolved. (R.R. at 544a-45a, 555a.) Dr. Shipkin stated to a reasonable degree of medical certainty that Claimant's L5-S1 lumbar spondylotic disease predated the injury. (R.R. at 549a.) Additionally, Dr. Shipkin testified that any ongoing headache symptoms that Claimant was experiencing were not caused by the work injury and that claimant did not suffer from concussion or post-concussion syndrome, or RSD. (R.R. at 552a-56a.) Thus, although both doctors noted Claimant had issues at some point with her head, hip, ankle, and back, both felt that her injuries were fully resolved and/or unrelated to the work injury. Moreover, we note that Claimant sought to expand the injury description in February 2013, which was after the date that the WCJ ultimately found Claimant had already fully recovered and was no longer in need of additional medical treatment.

Additionally, as Employer notes, the WCJ found that Claimant's treatment with Dr. Zahl prior to October 25, 2012, was reasonable and necessary;

16

however, the WCJ did not find that all the medical issues for which she was receiving treatment were causally related to her work injury. As such, Claimant failed to prove the additional injuries were causally connected to her work injury with unequivocal medical evidence and the WCJ properly rejected her petition for review.

## Utilization Review Petition

In her fourth argument, Claimant contends that the WCJ erred in granting Employer's utilization review petition by ignoring competent evidence of record establishing the reasonableness and necessity of the treatment rendered. As in her previous arguments, Claimant recites the portions of her own testimony and Dr. Zahl's testimony which she contends proves that her treatment was reasonable and necessary beyond October 25, 2012, and again delineates why she believes Dr. Raklewicz's and Dr. Shipkin's testimony was not credible. For the reasons set forth previously, the argument is dismissed as an impermissible challenge to the WCJ's credibility determinations.

## Suspension Petition/Reasonable Contest

In Claimant's final argument, she contends that the evidence Employer presented was insufficient to support a suspension of benefits because Employer never offered a position in which her earning power would not have been adversely impacted by her work injury. Claimant asserts that the position Employer offered was for four days of work per month, which would have resulted in an income less than her pre-injury position. Thus, Claimant contends that the WCJ erred in finding Employer presented sufficient evidence to warrant its pursuit of the suspension petition.

In response, Employer asserts that, even if Claimant's argument regarding the position's earning power were accepted, Employer still submitted sufficient evidence to merit at least a modification of Claimant's wage loss benefits. Further, Employer notes that the petition was rendered moot because its termination petition was granted prior to the position's start date. As such, Employer asserts that the totality of the circumstances demonstrates that Employer's contest of the suspension petition was reasonable.

Section 440(a) of the Act states that, if an employer contests liability, it will be liable for the claimant's costs, including counsel fees, if the matter is resolved in whole or in part in the claimant's favor. 77 P.S. §996.[4] However, section 440(a) also states that attorney's fees may be excluded if the employer presents a reasonable contest. "Reasonableness of an employer's contest depends on whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant." *Thissen v. Workmen's Compensation Appeal Board (Hall's Motor Transit)*, 584 A.2d 612, 615 (Pa. Cmwlth. 1991). Where the employer presents evidence that lends itself to "contrary inferences," the employer's contest will be deemed reasonable. *Id.*

Here, as the Board noted, Employer was able to present evidence, which, if believed, would have been sufficient at least to warrant a modification of any benefits to which Claimant would have been entitled. Specifically, Employer presented the testimony of Ms. Roberts, who testified that Employer offered Claimant a return to her pre-injury position, as well as the testimony of Dr. Raklewicz and Dr. Shipkin, who stated that Claimant could return to that position without any restrictions. We agree with the Board that this evidence provided Employer a reasonable basis for contesting

---

[4] Section 440 was added by section 3 of the Act of February 8, 1972, P.L. 25.

18

the issues of whether Claimant was physically able to return to work and whether there was an open job offer.

**Conclusion**

Because the WCJ found credible the testimony of Dr. Raklewicz and Dr. Shipkin, who testified that Claimant was fully recovered and able to return to her pre-injury position, the WCJ did not err in granting Employer's termination petition. Additionally, we disagree that the WCJ did not issue a reasoned decision because the WCJ's opinion allowed for adequate appellate review. We also reject Claimant's argument that the WCJ erred in denying her review petition to expand the description of her injuries given the WCJ's finding that Claimant had fully recovered from all work-related injuries prior to the filing of the review petition. Further, the WCJ did not err in granting Employer's utilization review petition by relying on the competent testimony of Employer's physician witnesses, who opined that, because Claimant was fully recovered, further medical treatment was unreasonable and unnecessary. Finally, the WCJ did not err in finding that Employer presented sufficient evidence to warrant its pursuit of the suspension petition.

Accordingly, for the reasons set forth above, the order of the Board is affirmed.

_____<br>
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in this decision.

19

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Debbie Cardona,                          :
               Petitioner     :
                             :   No. 750 C.D. 2017
         v.                          :
                             :
Workers' Compensation  Appeal            :
Board (Pleasant Valley Manor),           :
                Respondent      :

## ***ORDER***

AND NOW, this 30th day of January, 2018, the May 16, 2017 order of the Workers' Compensation Appeal Board is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge